Good morning, Your Honors. May it please the Court, my name is Marcia Cazarota, and I represent counsel table is my associate, Mark Mosha. If the Court would allow, I'd like to take two minutes, reserve two minutes for rebuttal. Yes. Okay, thank you, Your Honor. Your Honors, relative to the Rule 68 issue, the background is basically this, Defendant City of The next day the City tried to withdraw it with no explanation, and two days after that, the City sent a new offer of judgment, calling it an amended offer. By allowing the City to change its offer three days after it was made, the Court effectively ramps up Rule 68's finely-tuned balance in favor of the defendant. It gives the defendant much greater power. It takes away the 14 days afforded to a plaintiff to review and contemplate and consider a Rule 68 offer, and it exerts an even greater settlement pressure on a plaintiff. It also absolves a defendant of their responsibility to tread carefully when drafting Rule 68 offers of judgment, and it certainly does not put an end to litigation, which is one of the bases and reasons for a Rule 68 offer of judgment. A plaintiff will not be able to truly consider a Rule 68 offer of judgment with any certainty if it can be changed at any time pre-acceptance. Instead, a plaintiff would have to be scrutinizing every word or imagining what the drafter really intended with that sort of Damocles of whether or not impending modification hanging over a plaintiff's head is going to come down if they don't hurry up and accept it quickly. That's not the rule. Ms. Kazerouzian, your interpretation of the 68 letter is that it was the 300 and that you still have a right to attorney's fees and costs. Yes, Your Honor. Yes, indeed. And because on the face of the offer, it had no language suggestive of, it didn't include the words in costs, it didn't include the words in attorney's fees, and I think the law is pretty well settled since 1985 under Merrick v. Chesney that when you have a case that's brought pursuant to an underlying statute that provides for an award of attorney's fees and defines attorney's fees as costs of litigation, a Rule 68 offer has to be very carefully and precisely drafted. The case law such as Kirkland v. Sunrise, as I think both of us cite, terms it as saying you must tread with caution when you are wielding this kind of a tool. It is not, it's an onerous tool. But your argument is that because they made no mention of costs, that we should therefore not interpret the 300 as a complete offer of settlement which would include any costs or fees. Yes, Your Honor. And I think the case law is very clear under Merrick v. Chesney and the cases that interpret it, that if an offer is made under Rule 68 in a matter that is brought pursuant to a statute that has an underlying, that the underlying statute gives an ability for a court to award fees to a successful plaintiff, and when that underlying statute defines awardable costs as including attorney's fees, in order to include attorney's fees or subsume them in the offer, the offer has to very specifically state it with very specific words such as and costs now accrued, and costs and now accrued otherwise. The case law, specifically in Merrick, and I think it's at page 9, I'm not sure if I misspoke that, but what would happen then is a plaintiff would then have a right to enter the judgment as offered and then have a separate award of attorney's fees. Well, that would be the case if there had been no attempted modification. But the fact is the offer as it was made was simply mute on the question of costs and attorney's fees, and before you had accepted it, they said, we are going to clarify this to make it clear that the costs and attorney's fees are subsumed within, what was it, 500,000?  And so the rule that you argue for may indeed be the correct rule if they had not tried to clarify their order before acceptance. But it still, it does not defeat the argument that the order before acceptance was an incomplete order in the sense that it didn't spell out what was going to happen on Well, I would disagree, Your Honor. I would say that those cases would entitle me to relief and my client to relief because the silence in and of itself is very clear. That would be true if they had not clarified the order. I grant you, I'll assume you're correct on that. But the question before us is, was the an incomplete, or use the word ambiguous if you want, because it left the question open. And if that is the case, then the rule is that before acceptance, they can clarify. If in fact that was an incomplete offer, Your Honor, and I would suggest that it was not, there may be an opportunity to complete the offer, but that offer was complete. It was complete in that it did not, it clearly did not include attorney's fees or costs, regardless of what the city intended. That is not a plaintiff's job to determine when they get an offer in front of them because it's not an offer of settlement. It is an offer of judgment that has some really onerous consequences. So the absence of those words as defined in Merrick v. Chesney specifically says, if you don't have those words, Merrick v. Chesney says this, if you do not include the words that relate to costs now accrued or costs and attorney's fees, the court must then consider a separate award of attorney's fees. Merrick v. Chesney is very clear on that. But the very fact that there is a rule to that effect means that the offer that does not expressly take up costs and fees is an incomplete offer or an exception to the law. So if you do not call out one way or the other how costs and fees will be determined, and they do that before your acceptance, I understand the law of the circuit to be that they may clarify the order prior to your acceptance of it. And that's why those cases would not help you in the posture in which the case, the appeal, comes up to us now. Well, Your Honor, if there were, well, I pose this, Your Honor. If I am not, when I get an offer, I don't know whether or not they intended to include fees. I'm looking at the plain language of the document that says we're going to offer $300,000. Very detailed on how it's going to be. $300,000, 100 upon signature, 100 upon the passing of the 2016 budget, 100 upon the passing of the 2017 budget. We want all defendants dismissed. We will accept a judgment. Very clear. No mention of attorney's fees. I have every right to rely on Merrick v. Chesney that says they didn't mention fees and costs. Therefore, I have the right to move for fees and costs. I don't know when I look at it that it's incomplete or that it's a mistake. Let me just understand what the scope of the argument is. So if there was some other term not relating to costs that wasn't discussed in Merrick, silence could be clarified by a follow-up letter. You don't have to take the position it couldn't be in order to win. Or do you? Well, I would argue, yes, that because of Garialdi v. Suppose I disagreed with you on that. Are you making a specific argument that in light of Merrick's construction of Rule 68, the particular offer that speaks to costs with respect to that issue, the only options that the drafter of the offer has is to spell it out or not. If you don't spell it out, we know what your offer is. It's clear under Rule 68 that will be treated as a complete offer in which the costs are not included. If you would like the costs to be included, you have to make that clear. And so it's just a special rule that is derived from Rule 68 that means we can't look at anything outside the offer itself. Exactly, Your Honor. That's exactly true. How do you read Rule 68 to require that? Because the Rule 68 as defined by Merrick says, if it does not include the specific language that says, with costs, and then it goes on to say, and costs will include attorney's fees in cases where a statute defines attorney's fees as part of awardable costs, they're out of luck. They have to say it. If they don't say it, it is a complete offer. I'm entitled to rely on it, I would argue, or my client would argue. And the fact that I can't sit back and worry about every word and it's not the plaintiff's responsibility, when I get an offer, did they know what they meant? Did they read the law? Did they understand that this excludes it and I have a right now to go forward? The issue of whether or not they amended it afterwards, Your Honor, I think is also inappropriate because absent an ambiguity on its face, and there was no ambiguity on its face, there's nothing to clarify. It was a clear offer. So Your Honor, I would submit the rest on brief, because I know I'm out of time for the first argument, unless there are any other questions. Thank you. With regard to the color of law, Your Honor, I'm sorry. You're out of time, period. Oh, I'm out of time? It's, wow, completely. That was eight minutes. Excuse me. But you may rest on your brief on the second argument. Good morning, Your Honors. For the record, Attorney Raquel Ruano for the City of Lawrence. Speaking to the Rule 68 offer and some of the questions that were asked by judges to the plaintiff, that is correct, that the City had intended that that offer was incomplete and the first business day after giving the offer of judgment, the City did tender an amended offer of judgment. Ms. Ruano, I'm trying to figure out, the offer that was made, the 68 offer, which as counsel said is an offer of judgment, these aren't settlement negotiations here. They're not binding legal consequences. There was nothing ambiguous about the offer on the face of the offer. That's correct, Your Honor. What we're arguing is that it was incomplete. But it wasn't incomplete from their perspective. It was a complete offer from their perspective. Suppose someone had done some research on day 13 and the offer was floating for 13 days before someone did some research and said, oh boy, we didn't mention costs or fees. Would you still be making the same argument? I think it would be a lot harder, Your Honor. Why? I think one of the things that the Radecki Court, I know I understand it's an Eighth Circuit case, but it said in that case, the fact that the amended judgment, excuse me, the amended offer of judgment comes right on the heels of the original one was something that the Court really looked at to. And this is the same case, I believe. I would argue that the offer of judgment came on September 5th and on the first business day afterwards, an amended offer of judgment was given. So it wasn't that the plaintiff had 13 days to contemplate what they believed was one offer and then at the 11th hour, the City came and pulled the judgment at 5 o'clock on the 5th and on the next business day at 9 a.m., a new offer, an amended offer was given to the plaintiff. The plaintiff had not yet accepted that offer and still at that time had plenty of time to still determine whether or not to accept the amended Rule 68 offer. So that's how I would differentiate that is whether it's the 11th hour or right on the heels as the Radecki Court has already stated that a pre-acceptance amended offer of judgment would be valid. And if it was something in between, I'm trying to figure out where do you draw the line? I wouldn't say at this point, I wouldn't know where to draw the line. I just know that the City's offer came right on the heels. It was at 9 a.m. on the very next business day where the line would be drawn. I guess I don't know if that's this case. Because there was intense negotiation going on back and forth. There was. And the City took the pull-the-trigger route, which 68, once an offer has been made, then shifts the risk to the plaintiff to respond. Or if there's a loss at trial, then they bear the burden. That's correct. And the City at that point, even why we included all of them. So when the City pulls the trigger, why doesn't that place the responsibility on the City to make sure that the offer that you're making is consistent with your legal obligations? Well, your Honor, I think that's why we did the amended offer of judgment. Because you could see from all the negotiations prior to that, that there was an anticipation that the fire settlement amount, while it was a settlement, an offer of judgment would include the attorney's fees. You could see from the emails going back and forth that the plaintiff is aware that the amount that she's offering to settle is an amount that the City does not have. And that she, at one point, does make the comment that what the City's original offer of $200,000 barely even covers the legal fees. So the legal fees have been anticipated as part of the settlement amount. That's only-we only know that and only care about that if the first offer wasn't a completed offer. That's correct. But the only argument you're making as to why it wasn't a completed offer is because it did not reference attorney's fees. But I understand the argument that the plaintiff is making. It's a completed offer precisely because it did not mention attorney's fees. Because under Merrick and Rule 68, since we know what happens to the plaintiff if they refuse, or either party, if they refuse the offer of judgment, they're going to have to bear the costs. It's quite reasonable to read the rule to say that since that's the case, when you make your offer, unless you specify that the costs are included in it, we're going to assume that you're making an offer of judgment to pay, not including the costs. Why doesn't that make a lot of sense? It saves a lot of litigation. It best preserves the 14-day window on an issue that's going to be recurrent in every single one of these offers. Right? The issue of who pays the costs comes up every single time. It's right in the rule. Okay. So why wouldn't we treat that as a completed offer? And if you want to specify one way or the other, do that in the offer. It's no less complete or not. It's just got an extra term in it. Well, Your Honor, for two reasons. I would think, one, that the rule actually doesn't encapsulate that costs or attorney's fees need to be put in a Rule 68 offer of judgment. And two, that all the case law regarding Rule 68 has to do with what did the plaintiff know, or excuse me, the offeree know at the time that they accepted the offer of judgment. And this is exactly the case where the offeree, the plaintiff, knew exactly by the time she accepted it on September 9th that the city did intend for it to include attorney's fees in the final offer of judgment. But that sort of begs the question because we're supposed to measure that based on what did they know about a completed offer. If the first offer is a completed offer, we know what they knew. We wouldn't go to look at the other material. I mean, that's the argument from plaintiff in this case, which is it doesn't matter what the other stuff shows because what we care about is what did they know about the completed offer. They have 14 days to accept that. And their contention is they got a completed offer, which was one that made clear in light of Merrick that you were saying here's $300,000. It does not include attorney's fees. Well, Your Honor, it's not that it's clear versus ambiguous. It's that it's incomplete. And I think that's where the difference is. And I think the Rodecki court and even this court in its footnote in the Garelia-Rijos has assumed that there are circumstances, plural, not just one where it's ambiguous, but also where it's incomplete. And this is the case where it's... But it's not ambiguous. It's incomplete on the face. And given the negotiations that were going on back and forth and plaintiff's position that she was owed a lot more than the three, I mean, why wouldn't it be reasonable to assume that the city, by making that offer, had decided to somehow capitulate? Because it actually doesn't, for common sense, it doesn't make sense that if the city prior to that point is saying, I do not have, the city does not have $500,000, but why don't we enter judgment against the city and then I'm still going to be liable for $500,000 because I've given an offer of $300,000 plus $100,000. Because it's risk assessment and they could have logically determined that you would be on the hook assuming they get past the state action piece for a lot more. But none of that is in the record. I mean, that's not, I guess what I'm saying is that the common law, I mean, the common sense would be that they already know that that money is not on the table. So to then give an offer of judgment where that money is essentially on the table, everybody knows that there's something missing in that part. Is the difference between you and an opposing counsel on the question of what is or is not a complete offer the following? You are saying what is not a complete offer is an offer which does not state what was in the offeror's mind. It left something out that the offeror should have and would have put in. Whereas opposing counsel is saying when an offer is made that is understandable on its face and there is a legal rule that says under these circumstances, counsel fee costs and that is a complete offer. The difference is between you, I think, you're saying the criterion is what was in the offeror's mind. And the other side is saying the criterion is do we have a clear answer to what happens when the offer, whatever it expressed, well or ill, is made. Is that the difference between the two of you? It is, Your Honor. And just to take that a step further, is that once the city made the amended offer, then both parties at that point can have a meeting of the minds should that offer be accepted. I know that I only have one minute left, so if I could just move over to the color of law argument, unless there are any other questions. With respect to the color of law argument, the city is at this point arguing that Officer Sledge during the time of this incident was not acting under the color of law. There are several First Circuit cases that deal with color of law, and I know one of the things that the plaintiff has repeatedly stated in her brief was the sheer fact that he was on duty, that Officer Sledge was on duty, was in police uniform, and in fact did go back to his post at certain times during the incident. The First Circuit says that some of those indicia alone are not enough, and I believe that where the line is sometimes drawn at the First Circuit is during the incident complaint of what is, is there actual pretense of the use of authority or any kind of use of authority. And I think that's where this case is differentiated between all the other. There was pretense. He directed her as a police officer to get in the car. No, Your Honor, so what we would argue is that no, he was out there and that she was looking for her friend and that he didn't direct her to get in the car. He had offered her to give her a ride. However, the cases show that at some point that the color of law, whether you have that can actually switch at a certain point, as was the case in the Priya Burgos case. And we would argue that Priya Burgos is very analogous to this case in the sense that once he decided to take her into his private car to a private parking lot and do what he did, that at that point the color of law had ceased. There was nothing at that point during the incident where he threatened to arrest her or used his badge or he handcuffed her. Would that be true even if the jury could reasonably find that by the time, assume he, the jury could conclude, his appearing as an officer saying, are you safe, I'll take you back to the station, would be enough to say that he was acting under color of law at that moment. As I understand the district court and what you seem to be saying now, we're supposed to block that out and then consider the, quote, incident, which is what happens in the car. If a jury were to conclude that by the time she's in the car at that moment she's not in a position to be able to resist or get out of the situation because of her state at that time, wouldn't that suggest that a jury could conclude the officer using color of law did everything he needed to do to be in a position to commit the assault? No, Your Honor. Why not? Because, well, we're not asking that you block that out. It's that I think that there's established case law that it could, facts can change where something starts off. It can. In this incident, given the circumstance, which is that he gets her into the car by saying, are you safe, I'll take you to the station, and he's a police officer in uniform at the time. Right. And then the incident occurs when she, a jury could reasonably find, is not in a position to get out of that situation. Why would we separate the two circumstances? And it's a lot right next to the station. So the station is in sight. Well, I think you can separate it because during the incident there is actually no show of authority. And I think that's where the First Circuit has drawn the line. There are the instances where during the incident that they're saying stuff like, oh, I should have told you. But he doesn't need to show authority at that instant. That's my question. Why couldn't a jury reasonably conclude the show of authority did everything, the color of law, acting under color of law, the pretense of being an officer trying to help her, got him to the position that he needed to do to commit the assault. All of that got to that point. Why do we then break the chain at the moment of the incident, given her state at the time, according to the record? Well, her state had nothing to do with the police officer. It's not that he put her in that particular state. So it's not, I don't know if you're referring to. He's aware. He knows she's in that state. Jury could certainly conclude that he knew that. And so he's using his position as an officer to take a person who's in that state, get them in a position where they won't be able to get out of it. And then we're supposed to say at that point, well, now he's no longer under color of law. Well, I actually don't think that the inference would be that he knew that she was in that state. When he saw her, I think the record shows that she was walking, she was talking, and she had been with these other people. I think that once she gets in the car, I think her state dramatically changes. The officer says to the friend who shows up, she's sleeping it off. Obviously, he still knew she was in the state. No, that's what I'm saying, that once she gets in the car, which is what the city is arguing, is that break in the sequence, that's when her. And a jury couldn't conclude reasonably that he might have had a guess that that was going to be the case when he first approached her and suggested, come back with me in my car to the station? That would be unreasonable for a jury to conclude? I just don't think that the record shows that that was her state prior to when he is saying, why don't you come back to the station? And that's why the city would be arguing that there is a break at some point in the color of law, and that's when he does get in. Nothing in the record suggests anything happened in the car that would have led her to become more intoxicated upon entering the car than she was before she got into the car. No. So couldn't a jury infer from the fact that she was intoxicated once in the car that that would have been manifest to the officer when he approached her? I just don't think that that's a reasonable inference, given the facts. I think that once she's in the car, in the private vehicle, and taken to, it is a private lot, regardless that it's adjacent to the station. It is still a private lot. And that there's no indicia at that point of any kind of a show of authority, then that's what differentiates this case. And that's why I think it's in line with the Perea-Burgos case and those cases in the First Circuit, which say that the color of law argument can change at a certain point where it becomes something that was done under color of law and then something purely personal. If the Court has no further questions, I would rest on the briefs. Thank you. Thank you. Thank you, Your Honors. Just briefly on Rule 68. First, the amended offer came three days after the original offer. So there is more than just an overnight period of time. It is, I think, something that you, Judge Thompson, had said, what's the, is it 14 days, 13 days, when would it be okay or not okay to amend? This one came three days later. The second issue is they rely heavily on Radecki. Radecki, there was a clear ambiguity. The plaintiff's attorney even said, when I got this offer, I didn't even know if it included cost. So there was an ambiguity that was found. With regard to the color of law, Your Honor, the record is that Officer Sledge approached my client, said, you're too drunk and too pretty to be out on your own. I'll take you to the station. So he clearly understood her status. There is no evidence, nothing in the record that indicates that that lot was a private lot. It's just the lot adjacent to the station where everybody parks. And, Your Honor, he did order her into the car. Not only did he tell her he was taking her to the station, when she went to talk to her friends, and the record reflects this, who had given her a ride earlier saying she was going to be leaving, Officer Sledge yelled to her twice, get in the car, we're leaving. Get in the car, we're leaving. And she left those friends who had given her a ride earlier and went with him. So there was a continuing addition of authority, if nothing else, Your Honor. Thank you. Thank you.